**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    Plaintiff/Respondent,

v.                                                                                 No. 15-cv-0458 RB/SMV
                                                                                         10-cr-3404 RB

**GLORIA PORTER,**

    Defendant/Petitioner.

**MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before me on Defendant/Petitioner ("Petitioner") Gloria Porter's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Motion"), filed on June 1, 2015. [CV. Doc. 1, CR. Doc. 122].[1]  Plaintiff/Respondent ("the Government") filed a response on August 31, 2015. [CV Doc. 9, CR. Doc 130].  Petitioner did not file a reply. The Honorable Robert C. Brack, United States District Judge, referred this matter to me for proposed findings and a recommended disposition. [CV. Doc. 5, CR. Doc. 126].  Having reviewed the parties' submissions, the relevant law, the records in this case and Petitioner's underlying criminal case, I recommend that the Motion be DENIED and that Case No. 14-cv-0458 RB/SMV be DISMISSED with prejudice.

---

[1] References that begin with "CV" are to Case No. 14-cv-0458 RB/SMV.  References that begin with "CR" are to the underlying criminal case, Case No. 10-cr-3404 RB.

## FACTUAL BACKGROUND

Petitioner was a member of the National Federation of Federal Employees ("NFFE"), a union for federal employees. *United States v. Porter*, 745 F.3d 1035, 1037 (10th Cir. 2014). The NFFE is made up of five councils, each comprising smaller organizations called "locals." *Id*. Petitioner served as president of a local, as secretary/treasurer of the Armed Material Command ("AMC") Council, and as a national vice president for NFFE. *Id*.

In order to carry out her responsibilities as secretary/treasurer of the AMC Council, Petitioner was issued an ATM/debit card. She used this card for personal expenditures such as visits to a beauty salon and a day spa, and created and submitted fraudulent bank statements to the AMC Council's audit committee to attempt to hide her conduct. *Id* at 1038. A federal grand jury returned a 107-count indictment against Petitioner on December 20, 2010. [CR. Doc. 2]. The indictment alleged 105 counts of wire fraud under 18 U.S.C. § 1343, one count of mail fraud under 18 U.S.C. § 1341, and one count of aggravated identity theft under 18 U.S.C. § 1028A(a)(1). *Id*.

## PROCEDURAL BACKGROUND

A jury found Petitioner guilty of each of the 107 counts. [CR. Doc. 66]. Final judgment was entered on March 13, 2012. [CR. Doc. 85]. Petitioner was sentenced to 70 months of imprisonment and ordered to pay $143,457.50 in restitution. *Id*.

Petitioner appealed her conviction on March 22, 2012. [CR. Doc. 86]. She raised two issues on appeal: (1) whether the district court erred when it instructed the jury that forging a signature qualifies as a "means of identification" under the aggravated identity statute, and (2) whether the evidence was sufficient to support her convictions for mail and wire fraud. *Porter*,

2

745 F.3d at 1039.  The Court of Appeals for the Tenth Circuit upheld Petitioner's convictions, finding that (1) forging a signature qualified as a "means of identification" under the aggravated identity theft statute, and (2) there was sufficient evidence to support Petitioner's convictions for mail and wire fraud.  *Id*. at 1037.   Petitioner filed the instant action on June 1, 2015.  [CV. Doc. 1, CR. Doc. 122].

## ANALYSIS

Petitioner raises numerous allegations of ineffective assistance of counsel.  *See* [CV. Doc. 1, CR. Doc. 122].  She also claims that her conduct did not meet the elements of aggravated identity theft.  [CV. Doc 2, CR. Doc. 123] at 1–4.  Finally, Petitioner raises a claim of actual innocence.  *Id*. at 1, 3.

### A.  INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIMS

Petitioner alleges that trial counsel rendered ineffective assistance in seven ways: (1) by failing to properly cross-examine a witness; (2) by failing to argue that Petitioner's conduct did not meet the elements of aggravated identity theft; (3) by failing to establish that a member of the jury panel (and eventual jury foreperson) knew Petitioner; (4) by failing to challenge the use of pre-indictment transactions at trial, sentencing, and in calculating the amount of restitution; (5) by failing to further "investigate" the testimony of the Government's handwriting expert; (6) by failing to challenge the introduction of a computer and hard drive recovered from Petitioner's desk; and (7) by failing to present a plea offer to Petitioner.  [CV. Doc 1, CR. Doc. 122] at 4–11.

**Standard for Ineffective-Assistance-of-Counsel Claims**

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

466 U.S. at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* The Court need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient. The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 687–88. For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)). In evaluating an attorney's performance, the Court must be highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  "Neither hindsight nor success is the measure" of whether counsel was effective, and "effective" is not synonymous with victorious or flawless.  *Dever v. Kan. State Penitentiary*, 36 F. 3d 1531, 1537 (10th Cir. 1994).  Rather, to be considered *ineffective* assistance of counsel, "the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Id*. (citing *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

In order to satisfy the second prong of *Strickland*, a defendant asserting ineffective assistance of counsel must also affirmatively prove prejudice. *Strickland*, 466 U.S. at 693.  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

I. **The errors alleged in Grounds One, Three, and Five of Petition do not satisfy *Strickland*'s first prong because they represent reasonable strategic choices by trial counsel.**

To satisfy *Strickland*'s first prong of deficient performance, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997).

Grounds One, Three, and Five of the Petition clearly relate to trial strategy employed by Petitioner's counsel. In Ground One, Petitioner alleges that trial counsel was ineffective for failing to properly cross-examine a witness. Petitioner believes that counsel should have pursued a line of questioning about the suicide of a "key witness." [CV. Doc 1, CR. Doc. 122] at 5. In Ground Three, Petitioner alleges that counsel was ineffective for failing to "establish" that a member of the jury panel (and eventual jury foreperson) knew Petitioner. [2] *Id*. at 7. In Ground Five, Petitioner alleges that counsel was ineffective for failing to further "challenge" the Government's handwriting expert during her cross-examination of him and for failing to bring in

---

[2] Petitioner alleges that this juror lied during voir dire when he stated that he did not know her. [CV. Doc. 2, CR. Doc. 123] at 11. Petitioner claims they travelled to conferences and attended seminars together, and "were several times on opposing teams relating to labor-management issues." *Id*. This is the extent of Petitioner's factual allegations about this juror. She conclusorily states that she was prejudiced by his presence on the jury and his service as foreperson. *Id*.

While her claims regarding this juror are included in a section labeled "ineffective assistance of counsel," Petitioner appears to argue also that she is entitled to a new trial because of the juror's inaccurate statements. *Id.* at 12. This claim requires separate analysis from her claim regarding trial counsel's alleged ineffectiveness during voir dire, but it is similarly meritless. Petitioner did not allege–much less show–that this "juror was biased against [her]." *Gonzales v. Thomas*, 99 F.3d 978, 985 (10th Cir. 1996). She failed to demonstrate that an honest answer from this juror would have provided "a valid basis for a challenge for cause." *McDonough Power Equip v. Greenwood*, 464 U.S. 548, 556 (1984). Thus, Petitioner is not entitled to relief with regard to her assertions about this juror.

a separate handwriting expert. *Id*. at 9. In sum, Petitioner alleges trial counsel's cross-examination of a witness, actions during voir dire, and choices regarding an expert witness constituted ineffective assistance of counsel.

Each of these grounds is a matter of trial strategy. *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986) (quoting *United States v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983)) ("Counsel's selection of questions is a matter of 'strategic choice,' as to which [she] has broad latitude."); *Nguyen*, 131 F.3d at 1349 ("An attorney's actions during voir dire are considered to be matters of trial strategy."); *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (quoting *Strickland,* 466 U.S. at 690)) ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'").

Petitioner has not alleged facts with regard to cross-examination, voir dire, or the handwriting expert that show that trial counsel acted unreasonably. Indeed, Petitioner is engaging in precisely the sort of "Monday-morning quarterbacking" that is impermissible when trying to determine whether trial counsel's performance was deficient. *Valdez v. Winans*, 738 F.3d 1087, 1091 (1984). At most, Petitioner indicates that she would have preferred a slightly different course of action on these matters than her trial counsel ultimately chose. But that is not the standard for constitutionally deficient performance under the first prong of *Strickland*. The Court need not address the second prong of the *Strickland* test since Petitioner has made an insufficient showing on the first. *Strickland*, 466 U.S. at 697.

**II.     The errors alleged in Grounds Four and Seven do not satisfy *Strickland*'s second prong of prejudice.**

In order to satisfy *Strickland*'s second prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

      **a. Petitioner was not prejudiced by trial counsel's alleged failure to object to the introduction of the pre-indictment transactions at trial or in determining her sentence.**

In Ground Four, Petitioner asserts that trial counsel was ineffective for failing to challenge the use of pre-indictment transactions at trial and sentencing. She argues that evidence of transactions that occurred outside of the dates in the indictment (December 20, 2005, to September 2, 2008) should not have been introduced at trial or used at sentencing. [CV. Doc. 1, CR. Doc. 122] at 8.

As for the use of the pre-indictment transactions at trial, Federal Rule of Evidence 404(b) provides that while evidence of crimes, wrongs, and other acts is not admissible as proof of a defendant's character, such evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404. Just before Petitioner's trial began, trial counsel challenged the introduction of the pre-indictment transactions, [CR Doc. 104 at 4–6], and the Court overruled her objection, *id.* at 9. The Court later instructed the jury that it was "to consider [the pre-indictment transactions] only as they may bear upon the [Petitioner's] knowledge or intent as they pertain to the charges in the indictment itself. She is not on trial for anything that occurred prior to 2005." *Id*. at 138. The Court properly admitted the pre-indictment transactions at trial.

As for the use of the pre-indictment transactions in determining Petitioner's sentence, the Court was entitled to consider Petitioner's relevant conduct, even if not covered by the dates in the indictment. "In calculating [monetary] loss under the Guidelines, the district court [is not limited] to conduct underlying the offense of conviction, but rather may consider all of the defendant's relevant conduct." *United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009); *see also* U.S. Sentencing Guidelines § 1B1.3, cmt. n.9 (U.S. Sentencing Comm'n) (explaining what constitutes "relevant conduct" for sentencing purposes). The Court properly considered Petitioner's pre-indictment transactions as relevant conduct in its sentencing determination. Because use of the pre-indictment transactions was appropriate both at trial and at sentencing, Petitioner could not have been prejudiced by trial counsel's alleged failure to object to it.

> i. **Petitioner's claim concerning the use of the pre-indictment transactions in calculating her restitution is not cognizable at this stage.**

Petitioner also challenges the use of the pre-indictment transactions in calculating the amount of restitution owed. However, Petitioner "cannot challenge the amount of restitution awarded by way of a § 2255 motion . . . because [she] is not 'claiming the right to be released' from custody based on [her] claim." *United States. v. Satterfield*, 218 F. App'x 794, 796 (10th Cir. 2007) (unpublished)*; see also United States v. Papa*, 97 F. App'x 848, 850 (10th Cir. 2004) (unpublished) ("[Petitioner has] procedurally defaulted [his claim regarding restitution] by not objecting to the loss calculation until his § 2255 motion."). Petitioner's claim regarding the amount of restitution owed is not cognizable in this proceeding.

### b. Petitioner was not prejudiced by trial counsel's alleged failure to communicate a plea offer from the Government.

In Ground Seven**,** Petitioner asserts that trial counsel was ineffective for failing to communicate a plea offer from the Government. [CV. Doc. 1, CR. Doc. 122] at 11. "As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). In order to satisfy *Strickland*'s prejudice prong regarding an undisclosed formal plea offer, "[Petitioner] must demonstrate a reasonable probability [she] would have accepted the earlier plea offer." *Frye*, 132 at 1409. Further, the Tenth Circuit "remain[s] suspicious of bald, post hoc and unsupported statements that [a petitioner] would have changed [her] plea absent counsel's errors, and if [she] can muster no other evidence of how [she] would have responded if [she] had received effective assistance of counsel, the inquiry will focus on the objective evidence." *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013).

The Government did make a formal plea offer to Petitioner. [CV. Doc. 9-1, CR. Doc. 130-1] at 16–18. However, even if it is true that trial counsel did not communicate this offer to her, Petitioner has failed to allege—much less show—that she would have taken it. Not only does she continue to maintain her innocence to this day, *see* [CV. Doc. 1, CR. Doc. 122] at 1, but nowhere in her Motion does she contend that she would have taken a plea deal had she known one had been offered. Thus, even assuming it is true that trial counsel never communicated the Government's formal plea offer, Petitioner has failed to show that she was prejudiced as required by the second prong of *Strickland*.

### III.     Petitioner's allegations in Ground Two and Six are patently false.

In Ground Two, Petitioner asserts that trial counsel was ineffective for failing to "challenge" whether her conduct met the elements of aggravated identity theft. [CV. Doc. 2, CR. Doc. 123] at 9.  She suggests that the Government did not adequately prove that she used the "means of identification of another person," as required by the statute.  *Id.*; 18 U.S.C § 1028A(a)(1).  In other words, Petitioner argues that her trial counsel failed to challenge the sufficiency of the evidence of aggravated identity theft.

However, "[a] motion for judgment of acquittal fundamentally challenges the sufficiency of the evidence." *United States v. Willis,* 102 F.3d 1078, 1083 (10th Cir. 1996); *see also United States v. Mora*, 293 F.3d 1213, 1217 (10th Cir. 2002) (holding that counsel had challenged the sufficiency of the evidence when she moved for a judgment of acquittal).  Here, trial counsel moved for a judgment of acquittal on all counts—including aggravated identity theft—at the close of the Government's case. [CR. Doc. 106] at 142–43.  Petitioner's assertion that her trial counsel did not "challenge" whether her conduct met the elements of aggravated identity theft is simply false.

In Ground Six, Petitioner alleges that trial counsel was ineffective for failing to challenge the introduction of a computer and hard drive recovered from Petitioner's desk at her former workplace. [CV. Doc. 1, CR. Doc. 122] at 9.  These allegations are untrue, as trial counsel did challenge the introduction of the computer and hard drive on numerous occasions, using a variety of tactics.  At a pretrial hearing on Petitioner's Motion to Suppress, trial counsel argued vigorously that the computer and hard drive should not be admitted. [CR. Doc. 45] at 175–78, 184–85.  After the hearing, the Court explicitly ruled that the computer and hard drive would be

admissible at trial. [CR. Doc. 38] at 13–14. Counsel was not ineffective for failing to continue to object to the evidence at trial, as her objections would have been futile in light of the Court's pretrial ruling. *United States v. Simpson-El*, 423 F. App'x 803, 806 (10th Cir. 2011) (unpublished) ("Counsel is not ineffective in failing to raise spurious issues."); *Sperry v. McKune,* 445 F.3d 1268, 1275 (10th Cir. 2006) (counsel not ineffective for failing to raise meritless issue).

Additionally, even after the Court ruled that the hard drive and computer were admissible, counsel continued to challenge the circumstances of that search during her cross-examination of the Government's witnesses. [CR. Doc. 105] at 222–26 (questioning FBI agent who performed search of Petitioner's desk where computer and hard drive were found); [CR. Doc. 106] at 59–61 (questioning Petitioner's co-worker who gave agent permission to perform search); [CR. Doc. 104] at 130–32 (questioning union auditor who was present during search). Trial counsel's questions were intended to cast doubt on the reliability of the evidence recovered during the search. Petitioner's assertion that trial counsel failed to challenge the introduction of the computer and hard drive is simply false. Not only did trial counsel move to suppress the evidence before trial, she continued to challenge its reliability at trial. Trial counsel was not ineffective with regard to the admission of the computer and hard drive.

**IV.    The alleged errors of trial counsel, even if assumed to be true and considered cumulatively, did not prejudice Petitioner.**

In addition to her seven individual claims of ineffective assistance of counsel, Petitioner argues that trial counsel's errors cumulatively resulted in prejudice; that is, even if her claims do not individually rise to the level warranting habeas relief, when considered together, they do warrant such relief. [CV. Doc. 1, CR. Doc. 122] at 15. Cumulative error occurs when the

"cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin,* 306 F.3d 982, 992 (10th Cir. 2002).

Petitioner does not attempt to explain how these seven alleged errors, taken together, amount to cumulative error. Instead, she states conclusorily that "the number of errors and the extent of those errors was significant and resulted in major prejudice" to her. [CV. Doc. 1, CR. Doc. 122] at 15. Even if Petitioner's claims are assumed to be true and considered aggregately, however, she "has not demonstrated that the cumulative effect of the individual errors deprived [her] of a fair trial." *Malicoat v. Mullin*, 426 F.3d 1241, 1263 (10th Cir. 2005). She has not shown that trial counsel's alleged errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

### B. ACTUAL INNOCENCE CLAIM

Petitioner asserts that she "is actually innocent of the charges against her" and offers to produce an affidavit from a trial witness in support of her claim. [CV. Doc. 2, CR. Doc. 123] at 1. The Court construes this as a separate ground for relief, but whether habeas relief is available on such a claim is not entirely clear.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that habeas relief was not available on a claim of actual innocence based on newly discovered evidence where the petitioner did not allege an underlying constitutional violation. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id*. More recently, the Supreme Court noted that whether a "federal constitutional right to be released upon proof of 'actual

13

innocence' . . . is an open question." *Dist. Att'y's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (internal citations omitted). The Court also noted that if such a right did exist, a habeas petitioner claiming actual innocence would have to meet a "high standard" of proof to succeed on that claim. *Id*.

Assuming *arguendo* that Petitioner's claim of actual innocence is cognizable at this stage, she has failed to introduce any "newly discovered evidence" to support that claim. Though she promises to "present an entirely different set of circumstances for how the offenses with which [Petitioner] has been charged were actually committed—and by whom," and to present "testimony in the form of an affidavit by one of the witnesses from her trial," [CV. Doc. 2, CR. Doc. 123] at 1, she does neither. Petitioner may believe that her assertions about facts that "would have been uncovered" had cross-examination of a witness gone differently, [CV. Doc. 2, CR. Doc. 123] at 7–8, constitute "newly discovered evidence." In reality, they are nothing more than unfounded conjecture.

In contrast, the evidence of Petitioner's guilt was, in Judge Brack's[3] opinion, "overwhelming." [CR. Doc. 102] at 26. At sentencing, Judge Brack commented that "having read [the presentence] report, having considered the jury's verdict and Judge Russell's[4] comments [that Petitioner misled the jury during her testimony], I have no doubt, not the slightest, that Ms. Porter perpetrated this several-years fraud." *Id*. Petitioner has not met the "high standard" of newly discovered evidence that the Supreme Court has indicated would be required for a habeas petitioner to succeed on a claim of actual innocence. Petitioner's claim of actual innocence fails.

---

[3] Judge Brack presided over Petitioner's sentencing. *See* [Doc. 102].
[4] The Honorable David L. Russell, Senior United States District Judge, presided at the trial. [Doc. 29].

### C. AGGRAVATED IDENTITY THEFT CLAIM

The aggravated identity theft statute under which Petitioner was convicted provides: "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). As she notes in her own Motion, Petitioner raised the issue of whether her conduct met the elements of aggravated identity theft in her direct appeal to the Tenth Circuit. [CV. Doc. 1, CR. Doc. 122] at 2. On appeal, she argued that her conduct did not meet the elements of aggravated identity theft because a signature does not qualify as a "means of identification," and proof of use of a means of identification is required under the statute. *Porter*, 745 F.3d at 1041. The Tenth Circuit disagreed; it found that a signature does constitute a means of identification and upheld Petitioner's conviction. *Id*. at 1040.

Here, Petitioner argues that her conduct did not satisfy the elements of the aggravated identity theft statute because she did not use a specific person's identification and because no one was harmed by her conduct. [CV. Doc. 2, CR. Doc. 123] at 2. She did not raise these arguments on direct appeal. "When a defendant fails to raise an issue on direct appeal, [she] is barred from raising it in a § 2255 motion unless [she] can show cause excusing [her] procedural default and actual prejudice resulting from the errors of which [she] complains, or can show that a fundamental miscarriage of justice will occur if [her] claim is not addressed." *U.S. v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (internal citations omitted). Petitioner has done neither. She offers no reason for her omission of these claims on direct appeal, nor does she

allege that a fundamental miscarriage of justice would occur if they are not considered. Petitioner could have raised these arguments in her direct appeal. Because she failed to do so, she is procedurally barred from raising them here.[5]

But if Petitioner's claims were not procedurally barred, they would not fail nonetheless. First, there was evidence presented at trial that she forged the signature of the then-president of the AMC Council, thereby using the identity of a "specific person." *Porter*, 745 F.3d at 1038. Second, her claim that "no one was harmed in this case," [CV. Doc. 2, CR. Doc. 123] at 2, is irrelevant to whether her conviction for aggravated identity theft is valid because the statute does not require proof of harm. 18 U.S.C. § 1028A(a)(1). Besides, as Petitioner was required to pay $143,457.50 to the union in restitution, [CR. Doc. 102] at 3, it is difficult to take seriously her claim that "no one was harmed" in this case, [CV. Doc. 2] at 2. Indeed, at sentencing, Judge Brack remarked on "those Union members across the country . . . that have suffered at Ms. Porter's hands, that have had their trust betrayed." [CR. Doc. 102]. at 28. Petitioner's claims regarding her conviction of aggravated identity theft are both procedurally barred and without merit.

---

[5] In contrast, Petitioner's ineffective-assistance-of-counsel claims are not procedurally barred at this stage, even though she did not raise them in her direct appeal. While the general rule is that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," the Supreme Court has held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## CONCLUSIONS AND RECOMMENDED DISPOSITION

For the reasons set forth herein, I respectfully recommend that the Petition [CV. Doc. 1, CR. Doc. 122] be **DENIED** and **DISMISSED with prejudice**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Objections are limited to 20 pages and shall comply with the Local Rules regarding form of documents.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

---

*(signature)*

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**